

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2008

# Millington v. Temple Univ Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Millington v. Temple Univ Sch" (2008). *2008 Decisions*. Paper 1718.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1718

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4796

—————

ZSAZSA MILLINGTON,

Appellant

v.

TEMPLE UNIVERSITY SCHOOL OF DENTISTRY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 04-cv-03965)
District Judge:  Hon. Harvey Bartle, III

_____

Submitted under Third Circuit LAR 34.1(a)
July 25, 2007

Before:  BARRY, CHAGARES and ROTH, Circuit Judges

(Opinion filed:  January 23, 2008)
—————

O P I N I O N
—————

**PER CURIAM**:

ZsaZsa Millington, proceeding pro se, appeals from the District Court's order granting summary judgment in favor of Temple University School of Dentistry ("Temple") on her claims of discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("RHA").[1]

In her amended complaint, Millington alleged that she suffered from "orthopedic, arthritic, and neurological impairments, hearing loss, IBS [irritable bowel syndrome], PMDD (premenstrual dysphoric disorder), chronic migraine cephalgia, chronic pain syndrome, neck sprain and strain." (App. 41a.) She contended that, in 2002 and 2003, Temple failed to provide reasonable accommodations in response to her requests, denied extensions of time to complete her schoolwork, administered make-up exams in inappropriate settings, and did not allow her to take leaves of absence. (Id. at 42a - 44a.) Millington claimed that after these actions (and other unspecified acts before and after the 2002 to 2003 school year), Temple dismissed her from her program of dental studies. (Id. at 44a.)

Millington's allegations were fleshed out in discovery, and the parties are familiar with the details of Millington's career at Temple, which the District Court described in greater detail than we do in the summary that follows. In 1997, Millington enrolled in

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment on the ADA and RHA claims. See Abramson v. William Patterson College, 260 F.3d 265, 276 (3d Cir. 2001). Although Millington presented other claims to the District Court, she does not pursue them here, so we will not consider them. See In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003) (holding that failure to identify or argue an issue in an opening brief constitutes waiver of that argument on appeal).

Temple as a dental student. Missing many classes and failing many exams, she was on and off academic probation from 1997 to 1999. [2]

In January of the spring semester of 1999, Millington slipped going down a set of stairs at Temple and injured her shoulder and/or her neck. The next month, she missed one of her midterms because of an unspecified illness, and subsequently did not appear for a make-up examination. In May 1999, she requested three accommodations (extensions of time, freedom to move around in class, and rearrangement of furniture) through Temple's Disability Resources and Services ("DRS"), and Temple granted her request. Her grades remained poor after final examinations in the spring semester, however.

Millington again sought and received accommodations in the fall semester of 1999, specifically, double time for taking tests, DRS-proctored testing, the use of a computer and other devices during tests, permission to tape-record lectures, and a seat in the front of the class. Nonetheless, she continued to fail her examinations, missing some of them on the excuse of illness and sometimes not appearing for scheduled make-up tests.

In March 2000, Millington's neurologist submitted a list of proposed accommodations "due to trauma involved hitting head." (Supp. App. 518a.) In addition to extended testing time and delayed examination dates, Millington sought accommodations relating to her clinical rotations. She wished to limit her work to two days in the clinic, steady her dental drill with two hands and take rests while drilling, stand periodically, and have a clinical tutor-

---

[2]She also participated in remediation programs to improve her grades.

partner to explain to her how to complete clinical tasks efficiently. Temple provided some of the requested accommodations, but objected to the time limitations on her clinical rotations and the modified use of the dental drill. The dean of academic affairs recommended that Millington take a leave of absence because it did not appear that she could complete her clinical obligations at the time.

Millington missed many classes because of migraines and failed most of her courses in the spring semester of 2000. She subsequently sought and received permission to take a leave of absence. She returned to school in January 2001. She sought 12 accommodations. Temple provided most of them, including extended time to complete classroom and clinical assignments, preferred seating, permission to stand and walk around, alterations to her clinic cart, and a dental assistant's help with some procedures. However, Temple rejected Millington's proposed limitations – a schedule of non-consecutive half-days only – on her clinic and duty days, contending that they would interfere with patient care and Millington's ability to complete the required course work. Despite the accommodations, Millington missed many days of school and did not take all of her examinations. She requested a second leave of absence, which Temple ultimately granted on the condition that she repeat her third year of dental school.

Millington returned to Temple in April 2002. She attended the summer session of 2002, but missed many classes and appointments with patients and at least one examination. In November 2002, she requested accommodations, namely extended time for testing in a

quiet area, a hard-backed chair in classrooms and clinics, and permission to stand and move around during classes. Temple provided the accommodations, but Millington continued to miss classes, and to miss and fail examinations. In January 2003, she requested and received the same accommodations for the spring semester; Temple also provided her a dental assistant and allowed her to see the minimum number of patients.

Millington continued to miss classes in the spring of 2003. On April 23, 2003, she explained that she was absent because of chronic bronchitis. On April 24, 2003, her doctor described her as suffering from a reinjury to her cervical spine region. Her doctor then stated that Millington could resume clinical activities with limitations, recommending that she be given until September 30, 2003, to complete her clinical requirements, and noting that further extensions may be necessary. Millington failed or took "incompletes" in many of her classes that semester.

On May 2, 2003, Temple's Promotions Committee voted to dismiss Millington for failure to satisfy the regulations of the dental program. On May 13, 2003, Temple's Appeals Committee upheld the decision, and Millington appealed to the dean. After canceling two appointments, Millington met with him on June 30, 2003. The dean gave Millington one last chance to remediate her failing grades by August 22, 2003. On August 14, 2003, Millington sought an extension until September 30, 2003, claiming PMDD and IBS. Temple denied her request because it requires students to complete all work for one school year before the start of the next school year. On August 27, 2003, Temple dismissed Millington from the dental

5

school.

To establish a violation of the ADA or the RHA, Millington was obligated to show that she (1) has a disability; (2) is otherwise qualified to participate in the Temple dentistry program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability.[3] See 42 U.S.C. § 12132; Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991). "Disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); see Toyota Motor Mfg. v. Williams, 534 U.S. 184, 193-99 (2002).

The District Court concluded that Millington, who did not put forth any evidence in response to Temple's motion for summary judgment, did not show that she was disabled. Despite the list of medical conditions in the complaint, it is difficult to determine exactly what illness Millington bases her claim of disability on. Construing the facts in her favor, she suffered a fall in 1999 (which she reported as a shoulder injury (Supp. App. 686a) but which may have been the source of her head trauma (Supp. App. 518a)), migraines and other unspecified illness throughout the rest of her academic career, and some sort of reinjury to her cervical spine. Late in her academic career, she may have had a bout of IBS and/or

---

[3]To establish a claim under the RHA, Millington also needed to show that Temple receives federal financial assistance. However, Temple does not dispute the issue.

PMDD. However, Millington does not provide documentation of her medical problems, and some medical records (Supp. App. 683a-695a) undermine her claims of infirmity. Her unsworn assertions that she has various medical conditions, including her assertions on appeal about Lyme disease, are not enough to meet her burden to show that she has a physical or mental impairment. See Brettler v. Purdue Univ., 408 F. Supp. 640, 662-64 (N.D. Ind. 2006). Furthermore, she has not shown that any impairment she does have substantially limits a major life activity. An impairment that interferes in a minor way with the performance of manual tasks, like holding a dental drill, is not a substantially limiting impairment that restricts a major life activity, like basic abilities such as walking, seeing, and hearing. See Toyota Motor Mfg., 534 U.S. at 197. Also, while Millington may have been absent from school sometimes because of migraines, Millington did not put forth sufficient evidence about their nature, severity, duration, or impact to support an inference that they substantially limited a major life activity. See 29 C.F.R. 1630.2(2)(i)-(iii) (setting forth factors to consider in the individualized inquiry into disability).

Even if Millington could show that she has a disability, by showing that she has a physical or mental impairment that substantially limits a major life activity or otherwise,[4]

_____

[4]The parties did not argue whether Millington could be "regarded as having an impairment." Therefore, although we note that Temple disputes that Millington is disabled but granted accommodations on its conclusion that Millington was entitled to them under federal law (Supp. App. 463a - 473a), we do not further visit the issue of whether Temple regarded Millington as disabled. We repeat, too, what we and other courts have stated elsewhere, that "an offer of accommodation does not, by itself, establish" that an individual was regarded as disabled. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 776

7

Millington did not meet her burden to show that she was otherwise qualified to participate in Temple's program. An otherwise qualified individual is a person who can meet all of a program's requirements in spite of a disability, with or without reasonable accommodation. See Southeastern Comm. Coll. v. Davis, 442 U.S. 397, 406 (1979); McDonald v. Pennsylvania, 62 F.3d 92, 96 (3d Cir. 1995). Millington struggled academically from the inception of her dental studies. She was on and off academic probation before she slipped on the stairs in 1999 and subsequently requested accommodations. Even when Temple accommodated all of Millington's requests, as in May 1999, for example, Millington's academic performance did not improve. She continued to struggle although Temple provided most of the accommodations Millington requested, even providing her with a dental assistant for her clinical duties.

Millington bore the burden of proving that a reasonable accommodation existed that would enable her to meet the requirements of Temple's program. See Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1048 (9th Cir. 1999). Assuming she met her burden by offering the few suggestions that Temple denied – her requests to limit the length and frequency of her duty days, to modify the use of the dental drill, and to extend the time to complete her junior year requirements (which it had already extended to August 22, 2003) to September 30, 2003 – the burden then shifted to Temple to show that Millington's requested accommodation would fundamentally alter the nature of the school's program.

(3d Cir. 2004).

8

See id.  Temple met its burden, particularly when its decisions are viewed with the deference

ordinarily afforded educational institutions for decisions relating to their academic standards.

See, eg., id. at 1048 & 1051; Bercovitch v. Baldwin Sch., 133 F.3d 141, 153 (1st Cir. 1998);

cf. Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 226 (1985).  Temple provided

explanations that Millington's preferred limitations on clinical practice would have a

negative impact on Millington's schooling and the continuity of patient care.  (Supp. App.

521a-522a.)  Temple did not allow Millington to change how the dental drill was used

because of patient comfort and safety issues.  (Supp. App. 393a-395a, 521a-522a.)  Although

Temple had afforded Millington many extensions to complete her schoolwork, Temple

denied Millington's last request for an extension because Temple requires students to

complete assignments for one school year before the next one begins.[5]  (Supp. App. 412a-

414a, 452a-453a.)

In sum, Millington did not show that she is an otherwise qualified individual with a

disability.  As the District Court concluded, the undisputed evidence in the record shows that

Temple dismissed Millington not because of discrimination on the basis of any disability but

---

[5]Temple's explanation for denying the extension and its other reasons for denying the other accommodations also undermine any claim of discrimination based on a failure to provide reasonable accommodations.  To show discrimination based on a failure to provide reasonable accommodations the requested accommodation not only must be reasonable; it must also be necessary, and it must not fundamentally alter the nature of the program.  See PGA Tour, Inc. v. Martin, 532 U.S. 661, 681-83 (2001).  As noted above, the requested accommodations would have fundamentally altered Temple's program.  Millington did not (and does not on appeal) suggest that Temple's reasons serve as pretext for discrimination.

9

because of Millington's failure to meet Temple's academic requirements. Accordingly, the District Court properly entered judgment in favor of Temple on the ADA and RHA claims.[6] We will affirm.[7]

---

[6]In addition to arguing the merits of the judgment on the ADA and RHA claims, Millington contends that the District Court violated, or deprived her of, her right to a jury trial by resolving the claims on the papers at the summary judgment stage. We reject that argument. First, Millington waived her right to a trial by jury because she did not demand one. See Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 76 (3d Cir. 1983). Furthermore, "a litigant is not 'deprived' of a trial . . . upon grant of summary judgment when the evidence of record at the time of the motion supports its opponent on all key issues and the nonmovant fails to put in sufficient evidence to create a triable issue of material fact." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988).

[7]Millington has filed a "motion to file documents as confidential and seal." We will partially grant her uncontested motion. We will seal those documents that contain her Social Security number, specifically, pages 463a-473a and 486a of Appellee's Supplemental Appendix. However, we will otherwise deny Millington's motion because she does not show good cause to seal her excused absence slips or the notes from her doctors describing her illnesses or requesting accommodations. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994).

10